UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| BARBARA OWENS, | ) |
| | ) |
| Plaintiff, | ) Civil No. 3:19-cv-00080-GFVT |
| | ) |
| v. | ) |
| | ) **MEMORANDUM OPINION** |
| ETHICON, INC., *et al.*, | ) **&** |
| | ) **ORDER** |
| Defendants. | ) |
| | ) |

*** *** *** ***

This is a products liability action brought by Plaintiff Barbara Owens, who was implanted with a transvaginal surgical mesh sold by Defendants. Pending before the Court is Defendants' Motion to Exclude certain testimony of one of Plaintiff's experts, Nicholas Fogelson, M.D. [R. 73.] For the reasons that follow, this motion is **GRANTED in part** and **DENIED in part**.

**I**

This case is one of many around the country arising from injuries allegedly caused by implantation of transvaginal mesh to treat pelvic organ prolapse and other conditions. The defendants in these cases include Johnson & Johnson and its wholly owned subsidiary Ethicon, Inc., which was tasked by Johnson & Johnson with designing, manufacturing, marketing and selling the allegedly faulty products. [*See* R. 53-1 at 1–2; *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 508 (S.D.W. Va. 2014) (MDL No. 2327).] In early 2012, given the large number of related suits, the Judicial Panel on Multidistrict Litigation (JPML) determined that certain of these cases should be centralized for pretrial proceedings and formed MDL 2327, the Ethicon MDL, in the Southern District of West Virginia. *In re Ethicon, Inc.*

*Litig.*, 299 F.R.D. at 508.

In the present case, Plaintiff Barbara Owens brought suit in the Ethicon MDL on January 21, 2013, naming Ethicon, Inc. and Johnson & Johnson as Defendants. [R. 1.] Her suit stems from a December 17, 2007 procedure in Shelbyville, Kentucky during which Ms. Owens was implanted with a Prolift device, one of the allegedly defective mesh products. [R. 73-1 at 2; R. 74 at 4.] Following the procedure, Ms. Owens claims to have suffered from chronic urinary and bladder infections, dyspareunia (pain during intercourse), and leg pain and sciatica. [R. 74. at 4.] In October 2019, her case was transferred to this Court from the Ethicon MDL. [R. 52.]

Upon transfer, this Court ordered the parties to identify any pending motions which necessitated a ruling on the merits. [R. 65 at 2.] Pursuant to that Order, the parties notified the Court of a stipulation [R. 39] by which the parties agreed to dismiss all but the following counts against Defendants: Count I (Negligence); Count III (Strict Liability-Failure to Warn); Count V (Strict Liability Design Defect); Count XIV (Gross Negligence); and Count XVII (Punitive Damages). [*See* R. 72 at 4.] Separately, the parties identified Defendants' present motion to exclude, now docketed at Docket Entry #73, as necessitating a ruling. [*See* R. 69 at 2-3.] This motion seeks to exclude certain opinions outlined in Plaintiff's expert Dr. Nicholas Fogelson's case-specific Independent Medical Examination (IME) Report. [R. 73-1 at 1.] Ms. Owens has responded in opposition, arguing that Dr. Fogelson should be permitted to testify consistent with his expert report. [R. 74 at 3.] The matter is fully briefed and is now ripe for adjudication.

## II

### A

In a diversity case, federal law generally governs procedural and evidentiary issues, including the admissibility of expert testimony. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S.

579 (1993). Admissibility of expert testimony is governed specifically by Federal Rule of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Sixth Circuit has identified three specific Rule 702 requirements in deciding the admissibility of proposed expert testimony. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008). First, the proposed expert must have the requisite qualifications, whether it be through "knowledge, skill, experience, training, or education." *Id.* at 529 (quoting Fed. R. Evid. 702). Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (quoting Fed. R. Evid. 702). Third, the testimony must be reliable. *Id.*

**1**

As for the second prong of the test, district courts "must ensure that the proposed expert testimony is relevant to the task at hand and will serve to aid the trier of fact." *United States v. Smithers*, 212 F.3d 306, 313 (6th Cir. 2000). The Supreme Court in *Daubert* referred to this prong as the "fit" requirement. *Daubert*, 509 U.S. at 591–93. Because "scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes," courts must consider whether a particular expert's testimony will truly assist the trier of fact in understanding the evidence in the case. *Id.* at 591.

As part of the relevancy inquiry, an additional clarification is necessary. It is beyond question that federal law governs evidentiary matters in a diversity case while the substantive

3

elements of a claim are governed by state law. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Legg v. Chopra*, 286 F.3d 286, 289 (6th Cir. 2002). It is also true that Federal Rule of Evidence 401 defines relevance by looking to whether a "fact is of consequence in determining the action." Fed. R. Evid. 401. Naturally, facts that bear upon substantive elements of a claim more readily assist the trier of fact than those that do not. In certain instances then, the elements of the underlying state law claims inform what testimony is relevant. *See Forrest v. Beloit Corp.*, 424 F.3d 344, 358 n. 9 (3d Cir. 2005). As noted, in this case Ms. Owens maintains claims against Defendants for negligence, failure to warn, design defect, and gross negligence. [R. 72 at 4.] As part of the Rule 702 inquiry, the Court will look to the elements of these claims to determine relevance of Dr. Fogelson's testimony, as necessary.

**2**

The third prong of Rule 702 requires the Court to determine whether the testimony is reliable. Rule 702 provides a number of standards by which a district court in its gatekeeper role is to gauge reliability. A court should look to whether the testimony is based upon "sufficient facts or data;" whether it is the "product of reliable principles and methods;" and whether the expert "has applied these principles or methods reliably to the facts of the case." *In re Scrap Metal.*, 527 F.3d at 529 (quoting Fed. R. Evid. 702). Additionally, a district court is to consider "such factors as testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific [or technical] community." *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 593–94). The reliability inquiry is a flexible one, and the above factors are not a "definitive checklist or test." *Daubert*, 509 U.S. at 593.

District courts are given broad discretion in determining whether a particular expert's

testimony is reliable. *See, e.g.*, *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 672 (6th Cir. 2010); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."). Notably, in exercising this discretion, a court must be careful not "to impinge on the role of the jury or opposing counsel." *Burgett v. Troy-Bilt LLC,* 579 F. App'x 372, 377 (6th Cir. 2014). Instead, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

**B**

Ms. Owens indicates she intends to call Dr. Fogelson to testify "as her case-specific causation expert regarding injuries caused by the implantation of Ethicon's Prolift device." [R. 74 at 4 (citing R. 74-2).] Following receipt of Dr. Fogelson's expert report, Defendants now seek to exclude four specific portions of his anticipated testimony. [*See* R. 73-1 at 1–2.] The Court will address the admissibility of each portion in turn.

**1**

Defendants first challenge the relevancy of a portion Dr. Fogelson's case-specific opinion which addresses alternative procedures or treatment options that could have been used to treat Ms. Owens, instead of Prolift implantation. [R. 73-1 at 3.] Under Rule 702, the inquiry here is whether this testimony "is relevant to the task at hand and will serve to aid the trier of fact." *Smithers*, 212 F.3d at 313.

Defendants argue the only perceptible task at hand as it relates to this testimony is determining whether there was a design defect in the Prolift. [R. 73-1 at 3–4.] It is true, as noted by Defendants, that as part of a design defect claim in Kentucky a plaintiff must provide "proof

5

of an alternative, safer design that is practicable under the circumstances." *See Bosch v. Bayer Healthcare Pharm., Inc.*, 13 F. Supp. 3d 730, 742 (W.D. Ky. 2014). This established, Defendants argue the "alternative *procedures*" testimony is irrelevant to this element of the claim. [R. 73-1 at 3.] For her part, Ms. Owens fails to provide any substantial argument as to how this portion of Dr. Fogelson's opinion is relevant.

The Court agrees that this portion of Dr. Fogelson's opinion is irrelevant as it concerns Ms. Owens' design defect claim. While the alternative procedures and treatment options identified by Dr. Fogelson may have been legitimate ways to address Ms. Owens' condition, these alternatives have no bearing on the elements of a design defect claim. *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 2017 WL 1264620, at *3 (S.D.W. Va. Mar. 29, 2017) (MDL No. 2327) ("I agree with Ethicon that alternative procedures/surgeries do not inform the issue of whether an alternative design for a product exists."). It is also unclear, more generally, how this portion of Dr. Fogelson's testimony is relevant to any of Ms. Owens' claims.

Ms. Owens' failure to explain the relevance of this testimony is significant. "[U]nder *Daubert* and its progeny, a party proffering expert testimony must show by a 'preponderance of proof' that the expert whose testimony is being offered . . . will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of issues relevant to the case." *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000). Here, Ms. Owens' only argument is that this portion of the testimony should not be excluded because, along with the rest of the topics covered as part of Dr. Fogelson's general causation opinions, it is "essential to his specific causation opinion." [R. 74 at 7.] This imprecise explanation fails to respond in any substantive way to Defendants' initial arguments on this point. Further, it is entirely unclear how alternative treatment options relate to causation in the context of any of Ms. Owens' claims.

6

Dr. Fogleson's testimony concerning the alternative procedures or treatment plans which may have been used to address Ms. Owens' condition is not relevant. Consequently, the Court **GRANTS** this portion of Defendants' motion. The Court notes that the scope of exclusion stemming from this ruling is limited. Only the testimony concerning alternative procedures or treatment plans is excluded. Dr. Fogelson may still opine as to the safety and efficacy of the Prolift device, as these matters bear directly on certain elements of a design defect claim and specific causation. *See, e.g.*, *Radcliff Homes, Inc. v. Jackson*, 766 S.W.2d 63, 68 (Ky. Ct. App. 1989) (requiring proof that the product was in a "defective condition unreasonably dangerous to the user or consumer or his property" as part of a design defect claim).

**2**

The Court turns next to the portion of Defendants' motion which seeks more broadly to exclude the parts of Dr. Fogelson's testimony which Defendants claim "inappropriately consist of general causation opinions about Prolift in general." [R. 73-1 at 6.] As above, Defendants argue these parts of his testimony are irrelevant. *See id.* at 8.

Generally speaking, "[t]he distinction between general and specific causation experts is a procedural tool to aid in the streamlining of discovery and the filing of *Daubert* motions." *In re: Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.* No. 2327, 2016 WL 4958297, at *1 (S.D.W. Va. Aug. 25, 2016) (MDL No. 2327). Where an expert is designated as a case-specific causation expert, his or her expert testimony concerning causation must be tailored to only the specific causation opinions concerning the case at hand. That said, such testimony "may necessarily include elements of general causation related to [the] specific causation opinions." *Id.*

Defendants argue Dr. Fogelson's general causation opinions are irrelevant, as there is no evidence "linking [his] general opinions to the specifics of Ms. Owens' experience." [R. 73-1 at

7

8.]  In response, Ms. Owens argues that Dr. Fogelson's general causation opinions "are essential to his specific causation opinions in order to link the mesh defect characteristics with Ms. Owens' specific injuries." [R. 74 at 7.]  She then notes the various ways in which Dr. Fogelson links the alleged Prolift defects with Ms. Owens' complaints. [*See id.* at 7–9 (citing R. 74-4).]

After review of Dr. Fogelson's report, the Court finds that his general causation opinions are offered only to link the typical mesh defect characteristics with the alleged injuries to Ms. Owens.  For example, Dr. Fogelson links Ms. Owens' buttocks and leg pain to the Prolift device by noting that such pain is consistent with literature "demonstrating significant rates of buttocks and perineal pain with posterior mesh placement." [R. 74 at 9 (quoting R. 74-4).]  This is the type of "valid scientific connection to the pertinent inquiry" required under *Daubert*. *Daubert*, 509 U.S. at 591–92.  On the whole, Dr. Fogelson's general causation opinions are sufficiently relevant to this case-specific inquiry.

The portion of Defendants' motion to exclude seeking to exclude Dr. Fogelson's general causation opinions is **DENIED**.  However, the Court again notes the limited scope of this ruling.  At trial, Plaintiff's counsel must tailor Dr. Fogelson's expert testimony to only include his causation opinions applicable to Ms. Owens' case, consistent with the Court's below findings on Defendants' more specific challenges.

**3**

The Court will now address Defendants' more specific argument that "Dr. Fogelson's opinions as to recurrent UTIs, erosion, mesh contraction, inflammation, and foreign body response should be excluded as unreliable." [R. 73-1 at 9.]  Defendants argue that Dr. Fogelson's opinions on these matters are unreliable as they are not supported by the evidence. *Id.*  In response, Ms. Owens refutes Defendants' contentions only as it concerns the reliability of

Dr. Fogelson's opinions as to mesh contraction, inflammation, and foreign body response. [*See* R. 74 at 9.] Here, the inquiry under Rule 702 is whether the opinions at issue are based on sufficient facts and are the product of reliable principles and methods as applied to those facts. *In re Scrap Metal.*, 527 F.3d at 529 (quoting Fed. R. Evid. 702).

### a

The parties' briefing indicates that the portion of Defendants' motion seeking to exclude Dr. Fogelson from testifying about Ms. Owens' recurrent UTIs is largely unopposed.[1] And brief review of Dr. Fogelson's report reveals there is no support in the record for the introduction of his testimony relating to this condition. [*See* R. 74-4 at 4–5.] In fact, his report explicitly states: "I lack the adequate information to make an informed opinion as to whether Ms. Owens' recurrent urinary tract infections can be attributed to her Prolift Posterior mesh." *Id.* at 14. The Court **GRANTS** the portion of Defendants' motion seeking to exclude Dr. Fogelson's from testifying as it concerns Ms. Owens' recurrent UTIs. This ruling applies to exclude any testimony relating to inflammation or infection relating specifically to the alleged recurrent UTIs.

### b

The reliability of Dr. Fogelson's opinions concerning Ms. Owens' mesh contraction, inflammation, and foreign body response remains in dispute. As an initial matter, the Court notes that while Defendants seek to exclude the testimony concerning mesh contraction, they offer no developed argument in support of such exclusion. On this point, Ms. Owens argues that exclusion of Dr. Fogelson's testimony is improper for two key reasons. First, Dr. Fogelson's report cites to relevant literature which discusses the regularity of mesh contracture complications

---

[1] The admissibility of Dr. Fogelson's testimony concerning possible future mesh erosion is considered below, in Section II.B.4, where the Court considers the propriety of Dr. Fogelson's testimony concerning future harms and complications more comprehensively.

in Prolift patients.[2] [R. 74 at 10 (citing R. 74-4).] And second, he then explains why his physical findings as to Ms. Owens are consistent with mesh contracture in Prolift patients. *Id.* In doing so, Dr. Fogelson properly applies scientifically valid methodology to the facts of the case, as required under *Daubert*. *Daubert*, 509 U.S. at 592–93. The portion of Defendants' motion seeking to exclude testimony as to mesh contracture in Ms. Owens is **DENIED**.

The reliability of Dr. Fogelson's testimony as to inflammation and foreign body response is a closer question. Here, as pointed out by Ms. Owens, Dr. Fogelson's report again cites to relevant literature in support of the proposition that inflammation and foreign body response can occur in the aftermath of a Prolift implantation. [*See, e.g.*, R. 74-4 at 10 (citing multiple studies) ("Pain from mesh placement may come from direct inflammation over the mesh . . ..").] Dr. Fogelson's explanation when linking these potential risks and complications to the facts of the case is, however, somewhat limited.

That said, at this preliminary stage, it is clear enough from the record how Dr. Fogelson reached his conclusions. In relevant part, his report states: "The mesh [in Ms. Owens] itself is firm and indurated, a marked change from its flexible and soft state at time of insertion. This is due to a chronic inflammatory reaction to the mesh from foreign body response, which leads to her dyspareunia." [R. 74-4 at 12.] While Dr. Fogelson fails to offer an overly thorough explanation, after review of his report, the reasoning behind his conclusion that inflammation has occurred is clear enough. Distilled down, the reasoning is as follows: studies show that inflammation is common following Prolift implantations; the firm nature of the mesh in Ms. Owens is consistent with chronic inflammation; thus, in light of his differential diagnosis, Dr. Fogelson concludes with a reasonable degree of medical certainty that Ms. Owens' pain is partly

---

[2] At no point do Defendants challenge the legitimacy of the literature relied upon by Dr. Fogelson. Instead, they largely challenge whether his opinions are supported by record. [*See* R. 73-1 at 10.]

caused by inflammation. *See id.* at 10–12. This type of reasoning is sufficiently "ground[ed] in the methods and procedures of science" and supported by the facts of the case, as required by Rule 702. *Daubert*, 509 U.S. at 590. And, contrary to Defendants' assertion, Dr. Fogelson does not need to be a pathologist to offer his opinion about inflammation and infection causing pain. [R. 73-1 at 10.] As an experienced pelvic surgeon and urogynecologist, these issues appear to fall squarely within the purview of his expertise. [*See* R. 74 at 4.]

In all, Dr. Fogelson's opinion on these matters rises above the type of "subjective belief and unsupported speculation" which can lead to exclusion of testimony for lack of reliability. *Daubert*, 509 U.S. at 590; *Finn v. Warren Cty., Kentucky*, 768 F.3d 441, 452 n. 1 (6th Cir. 2014). To be sure, the apparent lack of certainty in his opinion opens up the potential for "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" at trial. *Daubert*, 509 U.S. at 596. But, as it concerns admissibility, Rule 702 "does not require anything approaching absolute certainty." *Tamraz*, 620 F.3d at 671 (citing *Daubert*, 509 U.S. at 590). Dr. Fogelson's testimony as to inflammation and foreign body response is sufficiently reliable and, therefore, this portion of Defendants' motion to exclude is **DENIED**.

### 4

Lastly, the Court will address the portion of Defendants' motion seeking to exclude "[t]he speculative opinions of Dr. Fogelson as to potential future surgeries, harms, or complications that Ms. Owens may suffer . . . ." [R. 73-1 at 10.] Defendants argue more specifically that these opinions lack a reliable foundation in the scientific method. *Id.* at 10–11. Ms. Owens counters that these opinions are in fact well-reasoned and reliable, based on relevant literature and prior experience in combination with Dr. Fogelson's evaluation of Ms. Owens. [R. 74 at 13.]

On review, each of the four opinions Defendants object to is sufficiently grounded in the

scientific method and sufficiently reliable. Indeed, in each opinion, Dr. Fogelson clearly bases his conclusions on his evaluation of Ms. Owens, as informed by relevant literature and prior experience. For example, Dr. Fogelson's conclusions drawn relating to Ms. Owens' future issues with dyspareunia were based on his observation of the placement and contracted nature of the mesh. [*See* R. 74 at 13 (citing R. 74-4 at 11–12).] As it relates to the potential for future mesh erosion in Ms. Owens, he notes that the thin nature of the mesh and atrophy within her urinary and genital organs are indicators that it "could occur at any time in her future." *Id.* Importantly, as noted, these opinions are informed by his own experience and the relevant literature. [*See* R. 74 at 5–7 (citing R. 74-4 at 9–11).] In no way is this type of analysis speculative.

To be sure, Dr. Fogelson opines as to future medical needs and potential complications. But opinions are not speculative simply because they concern the future. As with any reliability inquiry, such opinions simply must be based on "reliable principles and methods" as applied to the facts of the case. *In re Scrap Metal.*, 527 F.3d at 529 (quoting Fed. R. Evid. 702). Here, Dr. Fogelson's future-facing opinions meet these criteria. As a result, this portion of Defendants' motion to exclude is **DENIED**.

### III

On the present record, only certain limited portions of Dr. Fogelson's testimony are inadmissible under Rule 702 and subject to exclusion. For those portions that remain, Plaintiff's counsel must tailor the presentation of Dr. Fogelson's testimony to conform with the above rulings. Should Defendants desire to object to his testimony, the Court will certainly consider more specific objections in the context of trial. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Defendants Ethicon and Johnson & Johnson's Motion to Exclude the expert testimony of Dr. Nicholas Fogelson [**R. 73**] is **GRANTED in part**

12

and **DENIED in part,** consistent with the findings of this Order.

This the 24th day of April, 2020.

Gregory F. Van Tatenhove
United States District Judge